ERIC MECKLEY (Bar No. 168181)
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, CA 94105
Tel.: (415) 442-1000
Fax: (415) 442-1001
eric.meckley@morganlewis.com

PAUL D. CLEMENT (*pro hac vice*)
C. HARKER RHODES IV (*pro hac vice*)
MITCHELL K. PALLAKI (*pro hac vice*)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
Tel.: (202) 742-8900
paul.clement@clementmurphy.com

*Attorneys for Petitioner X Corp.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| X CORP.,<br><br>*Petitioner*,<br><br>v.<br><br>ALEXANDER ADUSEI; ALINE BANDAK; SAGAR BONDE; LAUREN BOSE; WING KAI CHAN; CHEN CHEN; STEPHANIE CHENG; JIAHUI DING; CRAIG FILAMOR; LAUREN FRATAMICO; CHESTON GUNAWAN; SEUNG HEON HAN; IRIS HSIEH; LAUREN ITOW; SANJAY KAPOOR; JOHN LI; TRAVIS MCCLEERY; PRASIDA MENON; ANCA MOSOIU; LAUREN NAGRA; SOYOUNG PARK; ALISA RANGWALA; RYAN RICCETTI; STANLEY SOO; MARGARET SHI; YOALI SOTOMAYOR BAQUEIRO; LAUREN TRAYLOR; WUTAO WEI; BENJAMIN WHEELER; ADRIAN YUSI; HENG ZHANG; YIWEI ZHUANG,<br><br>*Respondents*. | Case No. 4:25-cv-02926-JST<br><br>**PETITIONER X CORP.'S OPPOSITION TO RESPONDENTS' MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11, 28 U.S.C. §1927, AND THE INHERENT POWER OF THE COURT**<br><br>Judge: Honorable Jon S. Tigar<br>Courtroom: 6<br>Date: August 28, 2025<br>Time: 2:00 p.m. |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ......................................................................................................... 2

     A.     The Parties Entered Into An Enforceable Arbitration Agreement ......................... 2

     B.     Respondents Refuse To Pay Their Shares Of The Arbitration Fees ...................... 3

     C.     X's Petition To Compel And Respondents' Motion For Sanctions ........................ 6

III.    ARGUMENT ................................................................................................................ 8

     A.     Respondents Have No Basis For Seeking Sanctions Under Rule 11 ..................... 9

     B.     Respondents Have No Basis For Seeking Sanctions Under 28 U.S.C. §1927 .... 12

     C.     Respondents Have No Basis for Seeking Sanctions Under The Court's Inherent Powers ..................................................................................................... 13

IV.    CONCLUSION ........................................................................................................... 14

**TABLE OF AUTHORITIES**

**Cases**

*Adhia v. Twitter, Inc.*,
　No. 1:25-cv-2393 (S.D.N.Y. filed Mar. 21, 2025) ................................................................. 6

*Anderson v. Twitter, Inc.*,
　No. 1:25-cv-1242 (D. Colo. filed Apr. 21, 2025) ................................................................. 6

*Archie v. Twitter, Inc.*,
　No. 1:25-cv-3680 (N.D. Ill. filed Apr. 4, 2025) ................................................................. 6

*Barber v. Miller*,
　146 F.3d 707 (9th Cir. 1998) ............................................................................................ 12

*Blixseth v. Yellowstone Mountain Club, LLC*,
　796 F.3d 1004 (9th Cir. 2015) .......................................................................................... 12

*Braunstein v. Twitter, Inc.*,
　No. 1:25-cv-10733 (D. Mass. filed Mar. 28, 2025) ............................................................ 6

*Bridgeport Mgmt., Inc. v. Lake Mathews Min. Props., Ltd.*,
　2014 WL 953831 (N.D. Cal. Mar. 6, 2014) ..................................................................... 12

*Chambers v. NASCO, Inc.*,
　501 U.S. 32 (1991) ............................................................................................................ 13

*Doering v. Union Cnty. Bd. of Chosen Freeholders*,
　857 F.2d 191 (3d Cir. 1988) ............................................................................................... 9

*Eastway Constr. Corp. v. City of New York*,
　762 F.2d 243 (2d Cir. 1985) ............................................................................................. 10

*Frazier v. X Corp.*,
　739 F.Supp.3d 219 (S.D.N.Y. 2024) ................................................................................. 5

*Frazier v. X Corp.*,
　No. 24-1948 (2d Cir. argued May 15, 2025) ..................................................................... 5

*Gadala v. Twitter, Inc.*,
　No. 3:23-cv-1595 (N.D. Cal. May 15, 2023) ..................................................................... 6

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*,
　801 F.2d 1531 (9th Cir. 1986) .......................................................................................... 10

*Harcourt Brace Jovanovich Legal & Prof. Publ'ns, Inc.*
  *v. Multistate Legal Stud., Inc.*,
  26 F.3d 948 (9th Cir. 1994) ................................................................................................... 11

*Havensight Capital LLC v. Nike, Inc.*,
  891 F.3d 1167 (9th Cir. 2018) ................................................................................................. 9

*In re Keegan Mgmt. Co., Sec. Litig.*,
  78 F.3d 431 (9th Cir. 1996) ............................................................................................. 12, 14

*Lahiri v. Universal Music & Video Distrib. Corp.*,
  606 F.3d 1216 (9th Cir. 2010) ............................................................................................... 14

*Lake v. Gates*,
  130 F.4th 1064 (9th Cir. 2025) ........................................................................................ 12, 13

*Ma v. Twitter*,
  2025 WL 436636 (N.D. Cal. Feb. 7, 2025) .................................................................. 5, 6, 11

*Ma v. Twitter, Inc.*,
  Nos. 25-1536 & 25-1695 (9th Cir. docketed Mar. 10 & 14, 2025) ......................................... 6

*Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*,
  893 F.2d 1109 (9th Cir. 1990) ........................................................................................... 9, 11

*Rosa v. X Corp.*,
  2024 WL 4903619 (D.N.J. Nov. 27, 2024) ..................................................................... *passim*

*Simon DeBartolo Grp. v. Richard E. Jacobs Grp.*,
  186 F.3d 157 (2d Cir. 1999) .................................................................................................. 10

*Strom v. United States*,
  641 F.3d 1051 (9th Cir. 2011) ............................................................................................... 10

*Townsend v. Holman Consulting Corp.*,
  929 F.2d 1358 (9th Cir. 1990) ......................................................................................... 10, 11

*United States v. Stringfellow*,
  911 F.2d 225 (9th Cir. 1990) ........................................................................................... 10, 11

*X Corp. v. Bahr*,
  No. 2:25-cv-2766 (C.D. Cal. filed Mar. 28, 2025) .................................................................. 7

*X Corp. v. McGrath*,
  No. 3:25-cv-748 (S.D. Cal. filed Mar. 28, 2025) .................................................................... 7

*X Corp. v. Soliman*,
  No. 2:25-cv-1039 (E.D. La. filed May 27, 2025) ................................................................... 7

**Statutes and Rule**

28 U.S.C. §1927..................................................................................................................8, 12

Cal. Civ. Proc. Code §1284.2.......................................................................................................3

Fed. R. Civ. P. 11(b)(1)-(2) .........................................................................................................9

**Other Authorities**

JAMS Employment Rule 31 ........................................................................................................3

JAMS Policy on Employment Arbitration Minimum Standards of Procedural
    Fairness ...................................................................................................................................4

Stipulation, *Gadala v. Twitter, Inc.*, No. 3:23-cv-1595 (N.D. Cal. May 15, 2023).........................6

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Respondents' motion for sanctions is meritless.  The issue at the heart of the parties' dispute has divided the district courts that have considered the question.  While reasonable minds—and reasonable jurists—can disagree as to the correct answer, such a debatable question is about the last context where either side should be seeking sanctions.  The motion should be swiftly denied.

The parties agreed to arbitrate their disputes by entering a Dispute Resolution Agreement ("DRA"), Dkt.1-1.  By its plain terms, the DRA requires that the arbitration fees must be "apportioned between the parties" and that "any disputes in that regard will be resolved by" the individual arbitrator hearing the case.  DRA §6.  The parties dispute the import of that language, and in particular whether that language requires the parties to share the costs of arbitration unless and until an individual arbitrator decides otherwise (as X Corp. contends) or whether, instead, X Corp. ("X") can be forced to cover all the costs of arbitration pursuant to a JAMS policy (as Respondents contend).  This same basic dispute is currently pending before multiple district courts, and at least one district court has sided with X by concluding that the language of the DRA requires that the parties "each pay half of the requisite [arbitration] fee" unless and until the arbitrator hearing the case orders otherwise.  *Rosa v. X Corp.*, 2024 WL 4903619, at *13 (D.N.J. Nov. 27, 2024).  Other courts, including this one, have reached the opposite conclusion.  The ultimate resolution of the issue will lie in the courts of appeals, if not the Supreme Court.  But in the interim, the idea that advocating one side of this reasonable dispute is sanctionable is deeply flawed.

## II. BACKGROUND

### A. The Parties Entered Into An Enforceable Arbitration Agreement.

Respondents were hired by X's predecessor, Twitter, Inc. ("Twitter"), between February 2019 and June 2022. *See* Declaration of Adam Mehes ("Decl.") at ¶3, Dkt.19-1. When Respondents joined the company, Twitter sent each of them a copy of the DRA, which was its standard dispute resolution agreement. Decl.¶4. As the DRA explains—in three different places, and in bold font each time—each employee receiving the agreement had the right to opt out of the DRA. *See* DRA at 1; *id.* §8; *id.* at 3; *see also* Dkt.19 at 5. Notably, many former Twitter employees *did* follow the procedure set forth in the DRA and opted out of that agreement. Decl.¶7. Respondents, however, did not exercise their opt-out option, *see* Decl.¶8, and they are therefore each bound by its terms.

The DRA is "governed by the Federal Arbitration Act, 9 U.S.C. §1 et seq.," and requires that "all covered disputes" be resolved "only by an arbitrator through final and binding arbitration and not by way of court or jury trial." DRA §1. It further provides that the parties will "bring any claim in arbitration before Judicial Arbitration and Mediation Services ('JAMS'), pursuant to the then-current JAMS Rules," defined to mean "the then-current JAMS Employment Arbitration Rules and Procedures." DRA §§3, 5. The DRA does not incorporate or refer to any of JAMS's other rules or policies, including the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("Minimum Standards").

The DRA also expressly allocates responsibility for paying arbitration fees. Section 6 of the DRA, entitled "Paying For The Arbitration," provides:

> Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. *If under applicable law the Company is not required to pay all of*

> *the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.*

DRA §6 (emphasis added). In other words, X must pay all of the arbitration fees only "where required by law"; otherwise, "[i]f under applicable law [X] is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law." *Id.* The DRA also incorporates JAMS Employment Rule 31(a), *see* DRA §5 (adopting "the then-current JAMS Rules"), under which the default rule for non-mandatory agreements is that "unless the Parties have agreed to a different allocation, each Party shall pay its pro rata share of JAMS fees." JAMS Employment Rule 31(a); *cf.* Cal. Civ. Proc. Code §1284.2 (default rule that "each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator").

### B. Respondents Refuse To Pay Their Shares Of The Arbitration Fees.

After the acquisition of Twitter in October 2022, X began restructuring its workforce and operations, resulting in multiple reductions in force that affected Respondents. Decl.¶9. X offered Respondents significant severance benefits in exchange for a general release of claims, but they declined that offer, choosing instead—like over 2,200 other former Twitter employees—to file demands for arbitration against X before JAMS. Decl.¶¶9-10.

In early June 2023, after numerous former Twitter employees filed arbitration demands, X sent a letter to JAMS explaining that the arbitration fees in any such proceedings should be apportioned between the parties under the DRA unless applicable law requires otherwise. *See* Decl.Ex.1, Dkt.19-1. JAMS responded on June 21, 2023, in a letter written by its General Counsel Sheri Eisner. Decl.Ex.2 ("Eisner Letter"), Dkt.19-1. In that response, JAMS declared that "notwithstanding any contrary provision in the parties' arbitration agreement," it had decided to

apply its own Minimum Standards to any arbitration demands by former Twitter employees, even though those standards "reflect JAMS administrative policy" rather than applicable law, are "separate and apart from the protections that may apply in any given jurisdiction" under applicable law, and "might go further than the law requires in a particular jurisdiction." Eisner Letter at 1. As a result, JAMS stated it would "continue to issue invoices in these matters consistent with [Minimum] Standard No.6"—that is, it would bill all arbitration fees in the arbitrations beyond the first $400 to X, rather than apportioning them between the parties. Eisner Letter at 1; *see* Minimum Standards ¶B & No. 6 (where "an arbitration is based on a clause or agreement that is required as a condition of employment," the "only fee that an employee may be required to pay" is the initial case management fee, and "[a]ll other costs must be borne by the company"). JAMS did not explain why its Minimum Standards, which apply only where the arbitration agreement "is required as a condition of employment," would apply to the DRA even though the DRA explicitly permitted employees to opt out. Eisner Letter at 1. Instead, it stated that "any further issue about whether the Minimum Standards apply in a given case should be directed to the arbitrator in the case," while asserting that it would be up to JAMS itself to "make a final determination." *Id.*

Because JAMS's position that X must pay the entire amount of the arbitration fees conflicts with the plain terms of the DRA, X has refused to pay that entire amount in newly opened arbitrations filed by former Twitter employees (including Respondents), and has instead paid only its pro rata share (as it believes the DRA requires). *See infra* pp.5-7.[1] In response, most of those

---

[1] Respondents repeatedly emphasize that X initially paid the full arbitration fees in certain other arbitrations before deciding to insist on its contractual rights under the DRA. *See* Dkt.23 at 1-2, 5, 8-9. To their credit, however, Respondents do not attempt to assert that X somehow waived its contractual right to insist on the division of arbitration fees required by the DRA by initially

- 4 -
PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION FOR SANCTIONS
Case No. 4:25-cv-02926-JST

former Twitter employees (including Respondents) have insisted that X must pay all of the arbitration fees, and have refused to pay their pro rata shares of those fees. *See infra* pp.5-7. The resulting impasse has led to litigation in multiple courts.

In *Frazier*, seven former Twitter employees filed a petition to compel arbitration in the Southern District of New York, seeking an order compelling X to pay all of their arbitration fees unless and until the individual arbitrator in their arbitrations ordered otherwise. *Frazier v. X Corp.*, 739 F.Supp.3d 219, 221 (S.D.N.Y. 2024). The district court granted that order, *see id.* at 231, and its decision is now on appeal to the Second Circuit, *see Frazier v. X Corp.*, No. 24-1948 (2d Cir. argued May 15, 2025).

Meanwhile, another former Twitter employee filed suit against X in the District of New Jersey, arguing that X had waived its right to compel arbitration by refusing to pay the full arbitration fees. *Rosa*, 2024 WL 4903619, at *9. The district court rejected that argument, agreeing with X (and disagreeing with *Frazier*) that the DRA's fee-sharing provision should be "given the meaning asserted by [X]" and that the "JAMS Minimum Standards [are] inapplicable," and ordering that the parties "shall each pay half of the requisite JAMS fee[s]." *Id.* at *11, *13.

Another group of former Twitter employees—represented by Respondents' counsel—filed a petition to compel arbitration in this Court, asserting that X had refused to arbitrate within the meaning of the FAA by refusing to pay all of the fees for their arbitrations. *See Ma v. Twitter*, 2025 WL 436636, at *1-3 (N.D. Cal. Feb. 7, 2025). This Court denied the former employees' motion to compel on other grounds. *Id.* at *13. Before reaching that result, however, it addressed the fee-sharing issue in dicta, recognizing that *Frazier* and *Rosa* had "reached different

---

paying the full arbitration fees in those other petitions. *See* DRA §1 (providing that the DRA "can only be revoked or modified by a writing, signed by [both parties], which specifically states an intent to revoke or modify this Agreement").

1  conclusions" on that issue and siding with *Frazier*. *Id.* at *5-9. The former employees appealed,

2  X cross-appealed, and the case is now pending before the Ninth Circuit. *See Ma v. Twitter, Inc.*,

3  Nos. 25-1536 & 25-1695 (9th Cir. docketed Mar. 10 & 14, 2025).[2]

4  Other former Twitter employees represented by Respondents' counsel have likewise filed

5  petitions to compel arbitration against X in several other jurisdictions, arguing in each case that X

6  has refused to arbitrate by refusing to pay the full amount of the arbitration fees—even though X

7  has made clear that it is perfectly willing to arbitrate if those former employees will pay their pro

8  rata share of the arbitration fees (as required by the DRA). Those petitions remain pending. *See*

9  *Adhia v. Twitter, Inc.*, No. 1:25-cv-2393 (S.D.N.Y. filed Mar. 21, 2025); *Braunstein v. Twitter, Inc.*,

10 No. 1:25-cv-10733 (D. Mass. filed Mar. 28, 2025); *Archie v. Twitter, Inc.*, No. 1:25-cv-3680 (N.D.

11 Ill. filed Apr. 4, 2025); *Anderson v. Twitter, Inc.*, No. 1:25-cv-1242 (D. Colo. filed Apr. 21, 2025).[3]

12 **C.  X's Petition To Compel And Respondents' Motion For Sanctions.**

13 After Respondents filed their arbitration demands with JAMS, JAMS issued a non-

14 refundable filing fee invoice due on March 27, 2025. Decl.Ex.4, Dkt.19-1. On March 25, 2025,

---

[2] This Court also rejected a former Twitter employee's assertion that California law required X to produce his signed DRA based solely on a request from his counsel, without written authorization from the employee himself. 2025 WL 436636, at *12. Respondents refer repeatedly in their motion to X's purported refusal to produce signed DRAs, *see* Dkt.23 at 2, 6 n.10, but do not explain how X's conduct in other cases with respect to other former employees could possibly provide a basis for sanctions here, especially when this Court found X's position justified under California law.

[3] Another former Twitter employee brought suit against X and another company in *Gadala v. Twitter, Inc.*, No. 3:23-cv-1595 (N.D. Cal. May 15, 2023). That suit was resolved by a stipulation in which X agreed to pay the arbitration fees for the plaintiff's arbitration (in exchange for, among other things, the plaintiff's agreement to drop her proposed class claims), without any judicial determination of whether the DRA required that result. *See* Stipulation, *Gadala v. Twitter, Inc.*, No. 3:23-cv-1595 (N.D. Cal. May 15, 2023), ECF No. 17; *contra* Dkt.23 at 7 n.11 (misleadingly suggesting that *Gadala* ordered X to pay the plaintiff's arbitration fees based on the terms of the DRA).

X's counsel reached out to Respondents' counsel by email to confirm whether Respondents would pay their respective shares of the outstanding invoice as required by the DRA. Decl.¶15. Respondents' counsel responded by email on March 25, 2025, stating that Respondents would not pay more than the first $400 of the $2,000 initiation fee for their respective arbitration demands, and that (despite the terms of the DRA) Respondents expected X to pay all the arbitration fees beyond that initial $400 amount. Decl.¶16. Because JAMS will not move forward with its arbitration of any of Respondents' claims until its filing fee invoice is paid, their refusal to pay their full respective shares of that invoice is preventing the parties from arbitrating their claims. Decl.¶¶17-18.

On March 28, 2025, X filed its petition to compel Respondents to arbitrate pursuant to the terms of the DRA by requiring them to pay their share of the arbitration fees. *See* Dkt.1.[4] X Corp. subsequently moved to compel arbitration, explaining that under the plain terms of the DRA, Respondents were required to pay their pro rata share of the fees for their arbitrations unless and until the arbitrator ordered otherwise. *See* Dkt.19.

On May 29, 2025—despite the district court decision in *Rosa* adopting X's view of the DRA, and despite the multiple cases in which former Twitter employees represented by Respondents' counsel have filed petitions to compel arbitration against X based on their own interpretation of the DRA's fee-sharing provision, and despite X's suggestion that any sanctions motion would be frivolous and a distraction from the resolution of the parties' ongoing good-faith

---

[4] X has also filed pending petitions to compel in the Central District of California, the Southern District of California, and the Eastern District of Louisiana with respect to other former employees who have sought arbitration but refused to pay their share of the arbitration fees as required by the DRA. *See X Corp. v. Bahr*, No. 2:25-cv-2766 (C.D. Cal. filed Mar. 28, 2025); *X Corp. v. McGrath*, No. 3:25-cv-748 (S.D. Cal. filed Mar. 28, 2025); *X Corp. v. Soliman*, No. 2:25-cv-1039 (E.D. La. filed May 27, 2025).

1  dispute about the requirements of the DRA—Respondents filed the present motion for sanctions
2  against X and its counsel under Federal Rule of Civil Procedure 11, 28 U.S.C. §1927, and this
3  Court's inherent authority. Dkt.23. According to Respondents, by filing a petition to compel
4  arbitration that seeks to require Respondents to pay their share of the arbitration fees under the
5  DRA—advancing the same arguments that proved successful in *Rosa* and employing the same
6  procedure that Respondents' counsel have themselves adopted to press Respondents' own view of
7  the DRA in multiple cases, *see supra* pp.5-6—X and its counsel somehow engaged in "abusive
8  tactics" and "should be sanctioned for wasting the Court's and the parties' time by bringing this
9  case in court," rather than just accepting Respondents' interpretation of the DRA and paying all
10 the fees for Respondents' arbitrations. Dkt.23 at 1.

11 This Court subsequently stayed the pending briefing deadlines and ordered the parties to
12 confer as to whether this matter should be stayed pending the Ninth Circuit's resolution of the
13 pending appeal in *Ma*. Dkt.25. On June 23, 2025, the parties reported that X was willing to agree
14 to a stay of this matter pending the Ninth Circuit's decision in *Ma*, but that Respondents were not
15 willing to agree to a stay. Dkt.28. This Court thereafter lifted its temporary stay on June 24, 2025.
16 Dkt.29. In line with the Court's scheduling order, Dkt.30, X filed its reply in support of its motion
17 to compel shortly before this opposition, which means the briefing on X's motion to compel is
18 now complete. Both X's motion to compel and Respondents' motion for sanctions are set for
19 hearing on August 28, 2025.

20 **III.    ARGUMENT**

21 Respondents' motion for sanctions is thoroughly meritless. As Respondents themselves
22 acknowledge, one district court has already held that X's interpretation of the DRA is not just
23 reasonable, but correct, and that the DRA requires that the parties "each pay half of the requisite

JAMS fee[s]" unless and until the arbitrator hearing the case orders otherwise. *Rosa*, 2024 WL 4903619, at *13. The fact that other district courts (including this one) have reached the opposite conclusion comes nowhere near showing that X's interpretation of the DRA is clearly wrong, let alone sanctionably frivolous. Unsurprisingly, Respondents cite no authority remotely suggesting that X must surrender and adopt Respondents' interpretation of the DRA—on pain of sanctions— just because the lower courts have not uniformly agreed with X on this disputed issue. And Respondents likewise cite no authority remotely suggesting that it is somehow improper to file a petition to compel arbitration to challenge a counterparty's refusal to pay arbitration fees in accordance with the terms of the arbitration agreement—a procedure that *Respondents' counsel themselves* have adopted in numerous cases. Put simply, Respondents' motion for sanctions has no plausible basis whatsoever. It should be emphatically denied.

**A.     Respondents Have No Basis For Seeking Sanctions Under Rule 11.**

Federal Rule of Civil Procedure 11 authorizes sanctions for any filing whose arguments are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," or that is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1)-(2); *see Havensight Capital LLC v. Nike, Inc.*, 891 F.3d 1167, 1174 (9th Cir. 2018) (sanctions are available under Rule 11 for filings "without a legal or factual basis" or made "for an improper purpose"). As the Ninth Circuit has explained, Rule 11 permits sanctions "only in the 'exceptional circumstance,' where a claim or motion is patently unmeritorious or frivolous." *Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*, 893 F.2d 1109, 1115 (9th Cir. 1990) (quoting *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)).

For a filing to be frivolous under Rule 11, it must be "patently clear that a claim has absolutely no chance of success under the existing precedents, and … no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *United States v. Stringfellow*, 911 F.2d 225, 226 (9th Cir. 1990) (per curiam) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985)); *see also, e.g.*, *Strom v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2011) ("To constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify, or reverse the law as it stands." (brackets omitted) (quoting *Simon DeBartolo Grp. v. Richard E. Jacobs Grp.*, 186 F.3d 157, 167 (2d Cir. 1999))); *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986) ("If, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time that the position is adopted, then sanctions should not be imposed."). Whether a filing is frivolous and whether it is filed for an improper purpose are each "objective" inquiries. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). While those inquiries "are separate and distinct, they will often overlap since evidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose." *Id.* Indeed, under Ninth Circuit precedent, "complaints which initiate actions" are by definition "not filed for an improper purpose if they are non-frivolous." *Id.*

X's petition to compel arbitration comes nowhere near warranting sanctions under Rule 11. It is not remotely frivolous; on the contrary, it is well within the bounds of serious, non-frivolous argument, as dramatically illustrated by the reality that one district court *has already accepted* X's interpretation of the DRA, *see Rosa*, 2024 WL 4903619, at *11-13, as Respondents themselves admit, *see* Dkt.23 at 7 n.11 (citing *Rosa*). The fact that two other (non-binding) district court

decisions have reached a different conclusion hardly makes it "patently clear" that X's petition to compel arbitration "has absolutely no chance of success under the existing precedents." *Stringfellow*, 911 F.2d at 226; *see, e.g.*, *Riverhead*, 893 F.2d at 1117 n.2 (argument was nonfrivolous where "neither the 9th Circuit nor the Supreme Court have disposed of the issue"). X's petition was also brought for a perfectly proper purpose: to enforce X's right under the DRA to have the arbitration fees "apportioned between the parties," rather than placed solely on X. DRA §6; *see Townsend*, 929 F.2d at 1362 (recognizing that "non-frivolousness will often be highly probative of purpose" and that a complaint is "not filed for an improper purpose if [it is] non-frivolous"); *see also Harcourt Brace Jovanovich Legal & Prof. Publ'ns, Inc. v. Multistate Legal Stud., Inc.*, 26 F.3d 948, 953 (9th Cir. 1994) ("[A] complaint that is non-frivolous is, objectively, not filed for an improper purpose."). Rule 11 sanctions are therefore plainly unwarranted.

Respondents have no plausible basis for arguing otherwise. They claim it is "manifest" that X and its counsel knew or should have known that their petition and motion to compel arbitration were "entirely devoid of merit," Dkt.23 at 12, but do not explain how Respondents can reach that conclusion when *Rosa* has already ruled in X's favor, *see* 2024 WL 4903619, at *11-13, as Respondents themselves acknowledge earlier in their motion and as this Court acknowledged in *Ma*, *see* Dkt.23 at 7 n.11; *Ma*, 2025 WL 436636, at *5, and when there is no binding contrary authority. Respondents also claim that "JAMS's conclusion that [X] must pay the arbitration" fees is determinative, Dkt.23 at 12, but *Rosa* rejected that argument, *see Rosa*, 2024 WL 4903619, at *10-13, and X has already explained why it believes that Respondents are wrong: because the DRA delegates the authority to resolve fee disputes to the individual arbitrator hearing the case, not to JAMS itself. DRA §6; *see* Dkt.19 at 11-13. Finally, Respondents assert it is also "manifest" that X and its counsel "filed this case with the intent to obstruct and delay

Respondents' vindication of their claims," rather than to enforce X's own contractual rights under the DRA, Dkt.23 at 12, but provide no support whatsoever for that baseless assertion. The fact that Respondents continue to disagree with X on an eminently contestable issue of law does not afford any basis for Respondents to seek Rule 11 sanctions.

### B. Respondents Have No Basis For Seeking Sanctions Under 28 U.S.C. §1927.

Respondents likewise have no basis for seeking sanctions under 28 U.S.C. §1927. That statute allows a court to impose sanctions if an attorney "unreasonably and vexatiously multiplies the proceedings in any case." 28 U.S.C. §1927. Sanctions under §1927 "must be supported by a finding of subjective bad faith," which exists "when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Lake v. Gates*, 130 F.4th 1064, 1070 (9th Cir. 2025) (quoting *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015)); *see Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998).

As an initial matter, §1927 does not apply to X's petition to compel arbitration at all, as that statute by its terms "applies only to unnecessary filings and tactics once a lawsuit has begun" and not to case-initiating filings like the petition here. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). And X has not "unreasonably and vexatiously multiplie[d]" the proceedings in this case, 28 U.S.C. §1927, by filing a petition followed by a motion to compel; as this Court has recognized, a motion to compel arbitration is simply a procedure for seeking a ruling on the underlying petition. *See Bridgeport Mgmt., Inc. v. Lake Mathews Min. Props., Ltd.*, 2014 WL 953831, at *3 (N.D. Cal. Mar. 6, 2014).

In any event, Respondents come nowhere near presenting any evidence that would support a finding of "subjective bad faith" with respect to X's filings, and nothing in those filings "knowingly or recklessly raises a frivolous argument" or presents any argument "for the purpose

- 12 -
PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION FOR SANCTIONS
Case No. 4:25-cv-02926-JST

of harassing [Respondents]." *Lake*, 130 F.4th at 1070. As already described, both X's petition and its motion rest on firm legal ground, including the plain language of the DRA and a district court decision agreeing with X's interpretation of that language. *See Rosa*, 2024 WL 4903619, at *11-13; Dkt.19 at 8-11; *see supra* pp.10-12. Respondents' assertion that X's legal position is "entirely untenable," Dkt.23 at 14, cannot be squared with *Rosa* (and Respondents do not even try). On the contrary, *Rosa* explicitly recognized that X "has not acted in bad faith in remaining steadfast to its belief in the contractual terms as being explicit for fee-sharing and as superseding JAMS Minimum Standards." 2024 WL 4903619, at *13. In short, Respondents have no support whatsoever for their unwarranted assertions that X and its counsel "have knowingly (or, at a bare minimum, recklessly) acted to multiple [sic] these proceedings" and to "mire Respondents in protracted battles" in this case. Dkt.23 at 14. Respondents' request for sanctions under §1927 is therefore baseless.[5]

### C. Respondents Have No Basis for Seeking Sanctions Under The Court's Inherent Powers.

Finally, Respondents' attempt to seek sanctions under the court's inherent authority fails for much the same reasons. Courts have inherent authority to sanction a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," such as by willfully disobeying a court order. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). But to impose sanctions under

---

[5] Respondents are equally wrong to claim that X has somehow "caus[ed] needless delays" in these proceedings. *Contra* Dkt.23 at 14. On the contrary, JAMS issued its initial invoices for Respondents' arbitration demands in late February 2025 (approximately four months ago), and X contacted Respondents just a few weeks later to determine whether they would pay their pro rata share of those invoices. *See supra* pp.6-7. When Respondents informed X that they would not, X promptly filed the present petition to compel arbitration three days later, and filed its motion to compel arbitration just one week after that. *See supra* p.7. That is the opposite of "causing needless delays." *Contra* Dkt.23 at 14.

its inherent authority, the court must make "a specific finding of bad faith." *In re Keegan*, 78 F.3d at 436; *see Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010) ("[S]anctions imposed under the district court's inherent authority require a bad faith finding.").

Once again, Respondents present no remotely plausible basis for finding that X or its counsel have acted in bad faith. Respondents assert that X and its attorneys "over the past two-plus years … have persistently worked to obstruct many of its former employees from having their claims even heard." Dkt.23 at 16. But X's petition for arbitration was filed just three months ago (not two-plus years ago), and it was filed barely a month after JAMS sent X the first invoice for Respondents' arbitrations and Respondents informed X that they would not pay their pro rata share of the arbitration fees. *See supra* pp.6-7. Respondents do not explain how this court's inherent authority to impose sanctions could possibly extend to purported (and meritless) allegations of delay and obstruction in the years before this litigation was even filed, especially when any delay during those years stems from JAMS's own processing of Respondents' arbitration demands. *Contra* Dkt.23 at 16. More to the point, the only "obstruction and delay" that Respondents assert that is even arguably attributable to X and its counsel is that X has insisted on its contractual right to arbitration in accordance with the terms of the parties' agreement, including its fee-sharing provision. *Id.* There is nothing remotely sanctionable about that. Respondents have every right to disagree with X's position on the merits, and every right to litigate that disagreement before this Court (and the many other courts where Respondents' counsel has filed petitions to compel arbitration on behalf of other former Twitter employees). But they have no basis whatsoever for seeking sanctions against X and its counsel for asserting X's own (meritorious) contrary position.

## IV.    CONCLUSION

This Court should deny Respondents' motion for sanctions.

1

        Respectfully submitted,

        <u>s/Paul D. Clement</u>
        PAUL D. CLEMENT (*pro hac vice*)
        C. HARKER RHODES IV (*pro hac vice*)
        MITCHELL K. PALLAKI (*pro hac vice*)
        CLEMENT & MURPHY, PLLC
        706 Duke Street
        Alexandria, VA 22314
        Tel.: (202) 742-8900
        paul.clement@clementmurphy.com
        harker.rhodes@clementmurphy.com
        mitchell.pallaki@clementmurphy.com

        ERIC MECKLEY (Bar No. 168181)
        MORGAN, LEWIS & BOCKIUS LLP
        One Market
        Spear Street Tower
        San Francisco, CA  94105
        Tel.: (415) 442-1000
        Fax: (415) 442-1001
        eric.meckley@morganlewis.com

        *Attorneys for Petitioner X Corp.*

2

July 1, 2025